The next case is 24-1235 Federal Express Corporation v. Qualcomm Incorporated. Mr. Tucker, when you're ready. And we understand that the RPI issues are in these next two cases, but we've heard all we want to hear about them, so you can get to the unpatentability questions. Understood, Your Honor. I'm happy to discuss that instead. I bet you are. May it please the Court. The Board's obvious misfinding for Claim 7 rests on two errors. First, the Board misconstrued the term programming change. That term's ordinary meaning in view of the specification and the extrinsic record requires a change in the function of the program device. The second error is that substantial evidence does not support the Board's finding that Hashimoto renders Claim 7 obvious under that construction. Hashimoto simply teaches updating freshness data on an RFID tag and nothing about Hashimoto's update of that data changes the way that the tag functions. If we agree or think there's substantial evidence for the Board's reading of Hashimoto, do we have to resolve the claim construction issue? If you agree that there is substantial evidence, if the Court agrees that substantial evidence supports the Board's finding that Hashimoto teaches a programming change under our construction, then no, you would not have to reach the claim construction. You acknowledge the Board did analyze Hashimoto even under the assumption that your construction that you're not analyzing. They say they do, right? Yeah, and maybe we can turn to the substantial evidence. That would help me, thank you. Sure, wonderful. So, you know, I think the real problem with the Board's decision is that while it says at Appendix 86 through 87 that it was agreeing with Qualcomm's argument that Hashimoto discloses the programming change under our construction, it didn't do anything else. It just cited Qualcomm's argument at A923. It's really one sentence that is the entirety of the Board's analysis under FedEx's actual proposed construction and all it does is agree with Qualcomm and cite Appendix 923 and so even if we give the Board the benefit of the doubt there and go to Appendix 923, all that 923 does is cite two paragraphs of Hashimoto. That's Appendix 1648. It's paragraphs 116 and 117 and then it just states a conclusion that quote changing the freshness state of the food quote will cause the tag to function differently by reporting a different freshness date when read end quote. That's the entirety of Qualcomm's analysis that the Board seemed to adopt. If you look at paragraphs 116 and 117, all they talk about, they're each one sentence paragraphs in Hashimoto, all they talk about is updating the freshness state. They don't talk about reporting the freshness state. They just talk about updating the freshness state. Isn't the Board finding a meaningful similarity between that and what's expressly disclosed in your patent, I think it's 033 here, with respect to checking temperature and how often temperature is changed? And if understanding that we can't be comparing the embodiments to the prior art, I think I understand your question which is is there a similarity between the embodiment and the 033 patent and Hashimoto's disclosure? And I think the answer is no because in the 033 patent what happens in response to the programming change is that the device, the scent, the beacon device, or the item tracking device actually behaves differently after the programming change than before. The way it behaves differently is because before it checks temperature at a certain frequency. After it's programmed, it checks temperature more often. But I mean, I don't want to suggest this is just semantics, but it seems not unreasonable to say that's not a change in function, that doing the same thing more frequently is not any different than doing it less frequently. You're just doing the same thing at a different pace. So I'm having a hard time understanding why that's what's patented and somehow what Hashimoto does is so materially different that the Board lacks substantial evidence. So in the example of the patent, there would be a difference, right? So if we looked at a 10-minute period, if it was checking the temperature once every minute, it would check temperature 10 times. If it was checking the temperature every 30 seconds, it would check the temperature 20 times. So it would be functioning differently. Hashimoto is a different story. The only thing Hashimoto is doing is updating data in a register that stores a freshness state. And Hashimoto's function is simply, when I'm asked to read data out, I'm going to report that data. It does the exact same function every time. The only difference is the data. And I think on this point, this sort of comes back to the claim construction issue, but the Court's opinion in interval licensing that we cited in our brief is helpful because it distinguishes between instructions or programs on one hand, and that's the term programming change, and data on the other. And it cited both the specification in the patent in that case, but it also cited extrinsic evidence and recognized that there is a distinction between instructions or programs and data that is widely recognized in the art. Can there be programming instructions that do not correspond to a change in function? Sorry, could you repeat your question? Can there be instructions that do not correspond to a change in function? On the evidence in the record, I don't think so. No. Because the evidence that we have shown in this record overlies on your construction of programming change. Correct. I mean, that's why we think our construction of programming change. The programming change is broader than why wouldn't the Hashimoto program change. Because it's an instruction telling the device to change the pressure state. That's a programming change under a broader construction. So I don't think that was actually the Board's analysis. The Board said that the programming change... I think programming change is a very difficult term, and I don't understand the claim construction arguments here very well. You started off to say that the specification supports yours. Do you have specific points that you can direct us to that specifically say programming change means change in function? So we have... Without getting to the extrinsic evidence at first. I understand you have extrinsic evidence that helps you, but... Sure. And I think I will talk about the preface of this. I think this goes to a dispute between the parties. Qualcomm is arguing that we're arguing for a lexicography or disclaimer. Oh, I understand. We are not. We're arguing that the plain meaning of programming change means a change in function to a person of ordinary skill. And so if we look at the specification, there are a couple different instances where it describes programming. And it does not use the phrase a change in function. But all of the discussion in the specification... So what's the column and line you want us to look at? Sure. So I think we can start with Appendix 116, Column 8, Lines 25 through 30. And there, the specification describes programming more generally as dictating, for example, the manner in which a device detects environmental conditions. So it's going to the function of the device. That's one example. When we're talking about altering the programming, Appendix 115, Column 58 through... I'm sorry, Column 5, Line 58 through Column 6, Line 9. This specification repeats a similar definition or a similar explanation of programming as specifying the manner in which a device senses environmental conditions, again, a function. And then it provides an example of altering the programming of the Beacon device, to Judge Stark's question, to check the temperature more frequently. So all of these support our broader construction. Our construction is broader than these examples, that a programming change changes the function of the device. There's one more line in this same excerpt on Appendix 115 that explains how the programming can be altered. And I think this point is important too, because this is where I think the Board made an error. The patent explains that the programming can be altered, quote, by storing new or modified instructions. And the Board cited that as support for rejecting our construction, saying that this can include instructions that don't change the function of the device. But that doesn't make any sense. I mean, instructions tell the computer what to do. That is what the interval licensing case said when it relied on extrinsic evidence to separate instructions or programming from data. And it's consistent, if I can talk about our extrinsic evidence, it's consistent with our dictionary definitions, especially our technical dictionary definitions, which Phillips and other cases from this court have said are important to understand how one skilled in the art would understand a claim term. The technical dictionary we provided defines a program as a sequence of instructions that tell a computer how to receive, store, process, and deliver information. It tells it how to function. Another definition for program in that same dictionary calls it a set of coded instructions that direct a computer to perform some specific function, yield a solution to some problem, or control a machine or process. So what we have here is all of the evidence in the record from our expert analyzing the dictionaries and the specification, the dictionaries themselves, and even the examples in the specification all support this notion that a program dictates the function of a device, and changing the program will change that function. Qualcomm didn't provide competing expert testimony. It did not provide competing dictionaries. It simply now on appeal reiterates the board's mistake that there can be instructions that do not tell the computer what to do. What if the code is changed to make the device more efficient, but the same functions are carried out? In your view, would that be a programming change? I don't know if there's something that you're thinking about in terms of how... I just want you to answer the question. If the function of the programmed device does not change, then we don't think it's a change in the programming, because a computer program by definition is a series of instructions that tell a computer what to do. So to answer your question more directly, Judge Cunningham, if the computer function does not change, that's not a programming change. Maybe they made it more efficient by reorganizing the data. That would be more akin... What if they came up with a new algorithm for the program that does the same thing, but makes it do it, you know, milliseconds faster? That sounds like a programming change. Well, and it would function differently somehow if the algorithm... But it's ultimate function. I guess that's your point is it may not be the change in the ultimate goal of it, but it's still functioning differently because it works faster. Correct. Some step in that algorithm changed. It's not just directed to data. Correct. I see that I'm into my rebuttal, so I'm careful to save it. Thank you. Good morning. I may please the court. Stephanie Dubrow on behalf of Qualcomm Incorporated. In line with some of your questioning to opposing counsel, the court really does not need to resolve the claim construction dispute here because it wouldn't change the outcome. The board found that under FedEx's proposed construction, Hashimoto discloses a programming change, and that finding is supported by substantial evidence. In particular, the board found that Hashimoto's disclosure of updating the freshness date on the RFID tag changes its function because thereafter the tag reports a different freshness date. That finding is supported not only by Hashimoto's disclosures itself, which disclosed that the freshness date is updated, that the RFID tag is in communication with the tag reader and reports information from the tag. It's supported by Qualcomm's expert declaration submitted with the petition in which he opines that if the proper construction is a programming change is a new instruction and is not new data, then how is the board's determination that supported by substantial evidence because Hashimoto is just new data? Well, respectfully, your honor. Sorry, I'll just finish this and let you answer. Just describing it as a change in function seems to me not enough when under the claim construction that they're urging, it doesn't seem to be a change in instructions, just a change in data. Opposing counsel relies heavily on and FedEx relies heavily on interval licensing, and it represents that that decision made a distinction between instructions and data such that data can't be part of instructions. That's not what the court said in that decision. The court said that... Let's not talk about what we said in that decision. Let's just talk about this case and their argument that for their patent programming change is understood in the context of the specification to be a change in instructions to a device about how to operate. How is Hashimoto a change in instructions rather than just a change in the data it displays? Your honor, I think that there's a logical problem with sort of assuming that the change... No, no, no. I'm asking you a hypothetical based on the facts of this case. I don't want to re-argue it except that their articulation of the claim construction. You're getting up here and saying even under their claim construction, you win. They pointed us to a couple paragraphs in the board decision, and you're pointing me to the same thing, I think, where the board says this is a change in function. It sure doesn't seem like a change in function under their claim construction. It's a change of function to the extent that the programming change discussed in the patent is a change in function. In both situations, the only change that's made is a change to a stored value. In the example in the patent, the stored value is the one that specifies the interval at which the temperature is checked, and FedEx says that when that's changed, it causes the device to function differently. If Hashimoto's change of reporting a different value is not a change in function, then neither is the patent, because what the patent does is it still checks the temperature. That's the function being performed. The only change is that it does it at a different interval. In Hashimoto, they say it's still reporting. The only difference is that the data is being reported differently. Our argument is that the board was well-entitled to decide, based on the disclosures of Hashimoto and the patent itself, that to the extent the programming change described in the patent is a change in function, so is Hashimoto. Did that answer your question, Your Honor? And I'd like to just make another couple of points on some of the evidentiary points that FedEx's counsel raised. He argued that Hashimoto does not talk about reporting the updated freshness date. That's not correct. Hashimoto discloses that the freshness dates encoded on the RFID tag are read and used to perform shipping management. Our expert also testified that a person of skill in the art would understand Hashimoto to disclose that when the date is modified, it reports an updated date. Hashimoto also has a figure illustrating that the RFID tag is in communication with the tag reader. And in terms of the extrinsic evidence that FedEx relies on, they put in a number of dictionary definitions and they focus heavily on the ones that talk about a sequence of instructions that tell a computer how to receive, store, process, and deliver information without acknowledging that within that set of definitions in modern Dictionary of Electronics 7th edition, there is a definition that expressly recognizes that instructions or programming can include data. It defines program as a meaningful assembly of encoded instructions and data formats and data values internal to the program. That's the same thing that we're talking about here, both in the challenge patent with respect to the value that defines the interval at which temperature is checked and in Hashimoto with the value that defines the freshness date to be reported. So Counselor, it sounds like you agree that programming means instructions, right? I agree that programming means instructions or a set of executables, but it also includes data. In a program, you're going to have values that are stored that define things like how often a function occurs, what information is to be displayed or reported, and in both examples of programming change that we're talking about here, the change involves a change to a stored value in the programming. So do you agree that change in programming means a change in instructions? I do not believe that that's the plain and ordinary meaning of it to the extent you're saying instructions governs function. To the plain and ordinary meaning that we put forward below and in our brief is that a change in programming is any change to the device's programming, which could include executable instructions along with data used by those instructions, and a change to either of those components would represent a change to programming. It sounded like you had something to say about interval licensing, which is not addressed in your briefing. Why is that not problematic for you? Your Honor, we didn't address it in our briefing because quite frankly it favors us, not them. In that case, the parties disputed whether instructions could consist of data alone, and they were looking at just a data file by itself, and the court said no. There's a distinction between data alone and instructions, but the court went on to acknowledge that instructions can include data. Just like the examples that we're talking about here, the instructions can include data, and when you modify that data, you have the instructions because the data is part of the instructions. If you do not have further questions, I will sit down, but I'm happy to answer any additional ones that you have. We have your argument. Thank you. Just a couple of points, Your Honors. I know there are a lot of questions asking about a comparison between the patent and Hashimoto. One point on the patent, counsel was just up here arguing that the 033 patent implements a programming change by changing data and said that this threshold time was changed. That's not in the patent. There's no disclosure of that behaving differently because some stored interval time is changed. That is not in the patent. Instead, the patent says that you change the activity by altering the programming. It never makes that data distinction. It's not in the patent at all. The second point that counsel brought up was this disclosure in Hashimoto, where counsel said that Hashimoto does disclose reporting the freshness date and pointed to what I believe was Appendix 1648, paragraphs 104 through 106 that discuss performing shipment management. To be clear, none of those paragraphs talk about reporting the freshness date at all. They talk about performing shipment management generically. The way I thought about it when I read it was, if I knew the freshness date was decreasing, I would probably ship the goods faster. With that, I just wanted to bring those two distinctions to light.